Brett E. Lewis (BL-6812)
brett@iLawco.com
Justin Mercer (JM-1954)
justin@iLawco.com
LEWIS & LIN, LLC
45 Main Street, Suite 608
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326

*Counsel for Plaintiff Rachel Blakeman*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RACHEL BLAKEMAN,<br><br>         *Plaintiff*,<br><br>v.<br><br>RICHARD BLAKEMAN,<br><br>         *Defendant*. | Case No.: 13-cv-07348-LTS |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11 AND 28 U.S.C. § 1927**

Plaintiff RACHEL BLAKEMAN ("Plaintiff"), by and through her undersigned counsel, hereby moves the Court for sanctions against counsel for Defendant and RICHARD BLAKEMAN ("Defendant"), and submits this memorandum of law in support of her motion for sanctions pursuant to Rule 11, 28 U.S.C. § 1927, and the Court's inherent power.

**PRELIMINARY STATEMENT**

Plaintiff and Defendant are legally separated.  In the context of that separation, Plaintiff learned that Defendant had placed spyware on most of the family computers, as well as her personal and work computers, and was spying on her private communications, including with her matrimonial counsel.  After first denying it, Defendant admitted as much in his deposition testimony when he was caught red-handed, having inexplicably submitted an identical copy of

Plaintiff's parenting plan to the Supreme Court – a plan that Plaintiff had shared with only her attorney, consultants, and parents. What made Defendants' transgressions all the more outrageous was that Defendant had continued spying on Plaintiff's emails over a period of approximately six months after the court found that he engaged in criminal mischief when he broke into Plaintiff's office, accessed her computer without her permission, read her emails and deleted her files. The court issued a permanent order of protection that rendered this type of stalking behavior (i.e., monitoring Plaintiff's communications) not only a violation of federal law, but also a violation of the temporary order of protection. A copy of an excerpt from the transcript of the hearing before Hon. Ellen Gesmer dated March 5, 2012 is annexed hereto as **Exhibit A**.

      Defendant's response to being accused in the Complaint of violating federal and state law by intercepting and reading Plaintiff's electronic communications was to deny the things he had already admitted, and to accuse Plaintiff of having done the same things to Defendant. At no time during the divorce action, or otherwise, however, did Defendant ever offer proof that any spyware had been placed on a computer owned by Defendant, much less allege that Plaintiff had placed such spyware on any such computer. Nor did Defendant's matrimonial lawyer even question Plaintiff about allegedly placing spyware on Defendants' alleged computer. It is more than a coincidence that, in response to being sued for spying on her emails, Defendant, for the first time, now asserts that Plaintiff on February 7, 2012, spied on *his* emails. It also seems more than a coincidence that Defendant is seeking $250,000 in damages – the exact same amount that Plaintiff is seeking for Defendant's campaign of spying on her.

      Given that an excerpt of Defendants' deposition testimony was attached to the Complaint, prior to issuing blanket denials or asserting fictitious counterclaims, Defendants' counsel, at a minimum, was under a duty of reasonable inquiry.[1] Counsel, however, failed in that inquiry. The allegations in the counterclaim are not objectively reasonable – they fly in the face of the facts, including Defendant's own admissions. Nor is there any record in the

---

[1] For example, Defendant denies that he admitted gaining access to Plaintiff's email accounts and personal computers, after admitting to such conduct in his deposition. Compare Answer at ¶ 35 with Complaint at ¶ 35 and Exhibit A, Blakeman Dep. 43:21-53:11.

matrimonial proceedings of Defendant ever alleging that Plaintiff spied on his computer. When confronted with his client's dubious and unsubstantiated allegations in the context of a bitter matrimonial dispute, Defendant's counsel merely copied Plaintiff's complaint and re-submitted it to the Court – practically verbatim – as a counterclaim. A reasonable inquiry into the available evidence, however, would have revealed that Defendant's counterclaim is without any basis in fact, whatsoever.

## BACKGROUND

Pursuant to Rule 11(c)(2), Plaintiff served this motion and memorandum of law upon Defendant's counsel, more than 21 days prior to its filing. Plaintiff's counsel conferred by telephone and letter with Defendant's counsel, who declined to withdraw the counterclaims. Defendant offered to discuss amending Answer No. 35, but otherwise declined to amend the complained of answers.

Counsel's refusal to withdraw the counterclaims is based on a police report, dated February 15, 2012 (the "Police Report"), which he contends provides the evidentiary support for the counterclaims. A copy of the letter dated December 16, 2013 from Defendant's counsel, attaching a copy of the Police Report, is annexed hereto as **Exhibit B**. Notably, nowhere in the Police Report does Defendant accuse Plaintiff of placing *spyware* on his computer, *intercepting* his emails, or downloading emails stored with an *email service provider* – required elements of counterclaims under the Wiretap Act (18 U.S.C. § 2511) and the Stored Communications Act (18 U.S.C. § 2701). Defendant's counsel, nonetheless, contends that the Police Report provides a factual basis for the counterclaims.

It is again significant that Defendant filed a police report accusing Plaintiff of downloading files from his computer only after he had *twice* been caught intercepting Plaintiff's emails and forwarding them to his account. Combined with Defendant's deposition testimony (attached to the Complaint), first denying, then admitting his use of spyware to intercept and download Plaintiff's email communications, and the New York State Supreme Court's finding that Defendant's testimony was not credible in issuing a protective order, Defendant's counsel was obligated to more than naked reliance on a self-serving Police Report, which does not even

allege facts that support a cause of action under the counterclaims asserted, to provide a factual basis for the counterclaims he signed.

In addition to the above, an email dated February 2, 2012 from Defendant's matrimonial counsel, Alex Potruch, Esq., to Plaintiff's matrimonial counsel, Marian Shelton, Esq., undermines any factual basis for the counterclaims. A copy of the letter dated December 18, 2013 from Plaintiff's counsel that attaches the February 2, 2012 email is annexed hereto as **Exhibit C**. First, that email is dated five days *before* February 7, 2012 – the date on which Defendant swore in the Police Report and alleged in the counterclaims that Plaintiff accessed his "personal non shared computer" while he was picking up his daughter from Hebrew school. *Compare* Exhibit C *with* Answer ¶ 115. Defendants' counsel also stated at the time that the allegedly downloaded files were "easily accessible" – an allusion to the fact that the computer in question was a shared family computer and not a password protected personal computer as Defendant now claims. *See* Exhibit C; *see also* Complaint at ¶¶ 9, 12. There were no allegations at the time by Defendant's counsel that the computer in question was Defendant's *personal* computer, nor were there any allegations of spyware or intercepting email communications. *See* Exhibit C.

Defendant's counterclaim was filed to harass and intimidate Plaintiff, to increase her litigation costs, and to create the appearance of a set-off to her claims. Defendant's alleged evidentiary support is self-serving, non-corroborated, and undermined by other documentary evidence. Even so, it fails to make out the elements of claims under the Wiretap Act and the Stored Communications Act. Defendant's counsel was obligated to do more than rely on such specious evidentiary support, especially when presented with multiple opportunities to withdraw Defendant's baseless claims. Rule 11 does not sanction willful blindness to the inherent deficiencies and inconsistencies in a client's claim. Accordingly, Plaintiff respectfully requests that this Court grant Plaintiff her attorneys' fees in connection with this motion and the counterclaims, and such other relief as this Court deems just.

**ARGUMENT**

A.  **Legal Standard**

Federal Rule of Civil Procedure 11 requires a court to impose sanctions on an attorney, a represented party, or both, when the attorney has signed and submitted to the court a pleading, motion or other paper that is not, to the attorney's knowledge and belief after reasonable inquiry, "well grounded in fact" and "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed. R. Civ. P. 11 (sanctions "shall" be imposed). An attorney's signature also constitutes a warranty that the paper is not "interposed for any improper purpose, such as to harass or to cause unnecessary delay." *Id.* In the Second Circuit, the standard for determining whether a pleading, motion or other paper is either frivolous or interposed for an improper purpose is one of objective reasonableness at the time of the attorney's signature. *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000). Any signing party has "an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 551 (1991). "Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998), quoting *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir. 1985). "Reasonable inquiry" requires attorneys to seek credible information rather than proceed on mere suspicions or supposition. *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 73 F.3d 1253, 1257 (2d Cir. 1996).

Section 1927 of Title 28 of the United States Code authorizes the courts to sanction an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. The Court may impose sanctions under § 1927 for "conduct constituting or akin to bad faith," *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000); *See United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) ("Bad faith is the touchstone of an award under this statute.").

The Court may also award sanctions under its "inherent power" when presented with "clear evidence that the challenged actions are entirely without color, and [are taken] for reasons

of harassment or delay or for other improper purposes." *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986). Thus, a court may impose sanctions in its inherent power when "(1) the offending party's claims were entirely meritless, and (2) the party acted for improper purposes." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000) (quoting *Agee v. Paramount Commc'ns, Inc.*, 114 F.3d 395, 398 (2d Cir. 1997)).

**B.     The Answer and Counterclaims Contain Groundless Allegations and Denials**

As stated above, there is ample reason to be suspicious of Defendant's purported counterclaims. Plaintiff and Defendant are in the process of getting divorced. Complaint at ¶ 8. Plaintiff had obtained a protective order against Defendant, had gathered evidence that Defendant was spying on her emails, and had elicited an admission from Defendant that he had done so. *Id.* at ¶¶ 8, 40-43. In this context, Defendant walked into his counsel's office and claimed that it was not him, but his wife, who was spying.

An attorney acting reasonably under the circumstances would have seen a giant yellow light flashing caution and scrutinized the claims being made before taking his client's word at face value. *See Business Guides, Inc.*, 498 U.S. at 552-54 (1991)(affirming finding of sanctions where attorney failed to conduct a "reasonable inquiry" into claims before filing complaint and TRO). An attorney acting reasonably under the circumstances also could not simply deny allegations of the pleadings, which his client had already admitted, in substance, during his deposition, or feign knowledge insufficient to answer them. *See* Fed. R. Civ. P. 11(b)(4); *see also Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir. 1985)(granting sanctions against counsel and party for "presenting immaterial factual inconsistencies and by reiterating its conclusory allegations" as to feigned injuries on meritless claim when a "competent attorney" would know claims were "destined to fail"); *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 695-96 (11th Cir. 1995)(sanctions imposed upon attorney for asserting facts without evidence to support them and where defendant was aware that they were untrue).

As further demonstrated below, both the denials in the answer and the allegations in the counterclaim – which is a virtual carbon copy of Plaintiff's complaint – lack evidentiary support for the factual contentions contained therein. For example, Plaintiff alleges in the Complaint:

> 35. Despite first denying in sworn testimony that he had done so, Defendant later admitted gaining access to Plaintiff's email accounts and personal computers at his deposition in connection with the divorce proceedings. A copy of the transcript of the Examination Before Trial of Richard Blakeman in the parties' Family Court proceeding in and for the County of New York, dated February 1, 2013 ("Blakeman Dep."), is annexed hereto as Exhibit A. (Exhibit A, Blakeman Dep. 43:21– 53:11).
>
> \*   \*   \*
>
> 38. Despite first denying that he had accessed Plaintiff's private emails and documents, when confronted with evidence that he had done exactly that, Defendant admitted that he intercepted and copied not only the parenting plan created by Plaintiff, in consultation with her attorneys, but also read Plaintiff's private emails. Defendant implied that he was justified in spying on Plaintiff, because her alleged comments to other parents constituted a "character assassination" against him. (Exhibit A, Blakeman Dep. 98:22 – 99:9)

Complaint at ¶¶ 35, 38.

Then, in the Answer, Defendant states:

> 35. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "35" of the complaint.
>
> \*   \*   \*
>
> 38. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "38" of the complaint; except admit that the portions of the transcript (Exhibit A, Blakeman Dep. 98:22 – 99:9), cited in the Complaint, are a true and accurate transcript of the Defendant's deposition testimony.

Such denials are groundless, however, as Defendant previously admitted to such conduct:

> **Question (Plaintiff's Supreme Court counsel):** Isn't it true that you got Rachel's parenting plan from her e-mails, Rachel's proposed parenting plan?
> **Answer (Richard Blakeman):** I saw it, I used some of -- yes, I used some of her parenting plan from her e-mail.
>
> Q. Right, from her private e-mails?
> A. Yes.
>
> Q. She didn't forward that to you, you just read her e-mails, without her permission?
> A. Yes.
>
> Q. How did you see it, how?
> A. From the computer. . .
>
> \*   \*   \*
>
> Q. You reviewed it prior to it being provided to Judge Gesmer, yes or no?
> A. Yes.
>
> Q. Okay, and then you took that document, that Rachel prepared, downloaded it, and made your own, correct?
> A. Used it as a template, yes.

Complaint at Exhibit A, Tr. 100:6–101:10.

Not only was the deposition testimony attached to the Complaint, but Defendant can reasonably be expected to have been aware of his own prior admissions. *See also* Answer, ¶¶ 48, 49, 50, 68, 69 and 79.  Moreover, while Plaintiff averred numerous instances of unauthorized computer access and spying by Defendant, both in connection with the matrimonial proceedings and in the Complaint, not once in the February 1, 2013 deposition attached to the Complaint (see Complaint at Exhibit A), or in his previous deposition at the hearing issuing a protective order on March 5, 2012, did Defendant ever accuse Plaintiff of the spying behavior that he admitted to.

When confronted with these errors and omissions, Defendant's counsel responded that a Police Report provided the factual basis for Defendant's counterclaims. *See* Exhibit B.  While the referenced Police Report consists of Defendant's self-serving allegations, it does not allege the use of spyware, the interception of emails, or the downloading of files stored remotely by an email services provider. *See id*.  Moreover, as stated above, an email dated February 2, 2012

8

from Defendant's matrimonial counsel to Plaintiff's matrimonial counsel makes reference to alleged downloading of files from a computer – not electronic spying – which is alleged to have occurred on or before February 2, 2012 – not on the date provided by Defendant to the Police or alleged in the counterclaims. *See* Exhibit C.  Significantly, Defendant would have known at the time that he made the sworn statement in the Police Report that his account was false.  To the extent that any downloading of files occurred, it did not occur on the date Defendant said it did.  Nor were the files the password-protected, personal files that Defendant claims them to be – his own attorney called them "easily accessible," which belies any claim to the contrary. *See* Exhibit C at 3.  No reference to spyware or intercepting emails was made in the February 2, 2012 email from counsel and none in either police report. *See id.* (attaching another, earlier police report filed by Defendant one day prior to the Police Report).

  Defendant and his attorney, nonetheless, stand by their counterclaims alleging that, on February 7, 2012, Plaintiff accessed Defendant's email accounts and documents stored on what Defendant claims was his Dell Desktop Dimension 4700, while Defendant was away from the marital residence, without Defendant's permission and in violation of the ECPA. See Answer, ¶¶ 115-118.  As stated above, Defendant had never alleged to have been a victim of spyware prior to the filing of the Complaint in this action.  Only after Plaintiff filed a Complaint detailing Defendant's repeated intrusions and harassing behavior did Defendant claim that Plaintiff – not Defendant – was the one placing spyware on *his* computer.  Such transparently contrived allegations lack any basis in fact, and should not have been asserted by Defendant's counsel without first discharging a reasonable duty of inquiry.  Moreover, even when presented with evidence that undermines Defendants' self-serving claims, counsel for Defendant refused to withdraw the counterclaims.

  By signing both pleadings without making a reasonable investigation into the facts, by making allegations not supported by the evidence, by relying on the word of a client who had previously perjured himself during his deposition and had been found not to be credible by a Supreme Court justice, and by failing and refusing to withdraw the counterclaims when presented with additional evidence that undermines Defendants' counterclaims, Defendant's

counsel's behavior was objectively unreasonable. In addition, as the counterclaims are fabricated in whole cloth, and based on the acrimonious history between the parties, Plaintiff respectfully submits that they were advanced for an improper purpose – to harass, to increase the costs of litigation, and to give the appearance of a set-off against Plaintiff's claims.

Accordingly, for all of the foregoing reasons, Plaintiff respectfully requests that this Court grant attorneys' fees and such other relief as this Court deems just.

Dated: Brooklyn, New York
January 7, 2014

LEWIS & LIN, LLC

By: _/s/ Brett E. Lewis_____
Brett E. Lewis, Esq. (BL-6812)
Justin Mercer, Esq. (JM-1954)
45 Main Street, Suite 608
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
Email: brett@iLawco.com
justin@iLawco.com